IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

LEROY BLACK,

    Plaintiff,                            No. 2:12-cv-1439 GEB DAD P

    vs.

CITY OF VALLEJO,                     ORDER AND

    Defendant.                    FINDINGS AND RECOMMENDATIONS

_____/

        Plaintiff, a former state prisoner, is proceeding pro se with a civil rights action seeking relief under 42 U.S.C. § 1983. The matter is before the court on a motion for judgment on the pleadings brought on behalf of defendant Boersma. Plaintiff has filed an opposition to the motion, and defendant has filed a reply.

**BACKGROUND**

        Plaintiff is proceeding on an amended complaint against Vallejo Police Officer Barry Boersma. Therein, plaintiff alleges as follows. On October 15, 2011, police officers approached plaintiff while he was standing at a Golden One automatic teller machine ("ATM"). A brief foot pursuit ensued, at the conclusion of which defendant officer Boersma, without warning, tasered plaintiff in the back resulting in plaintiff suffering serious and permanent injuries. Based on these allegations, plaintiff claims that defendant officer Boersma used

1

excessive force against him during the course of his arrest in violation of the Fourth Amendment. (Am. Compl. at 3-4.)

**JUDGMENT ON THE PLEADINGS STANDARD UNDER RULE 12(c)**

The Federal Rules of Civil Procedure provide that, "[a]fter the pleadings are closed – but early enough not to delay the trial – a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). In deciding a motion for judgment on the pleadings, the court must accept the factual allegations of the complaint as true and construe the allegations in the light most favorable to the non-moving party. See Fleming v. Pickard, 581 F.3d 922, 925 (9th Cir. 2009); Hal Roach Studios v. Richard Feiner & Co., 896 F.2d 1542 (9th Cir. 2006). The court may grant a motion for judgment on the pleadings where there are no issues of material fact in dispute, and the moving party is entitled to judgment as a matter of law. See id.

As a general rule, when deciding a motion for judgment on the pleadings, the court may not consider factual material extrinsic to the complaint. See Fed. R. Civ. P. 12(d). However, the court may consider facts that "are contained in materials of which the court may take judicial notice."[1] Heliotrope General, Inc. v. Ford Motor Co., 189 F.3d 971, 981 n.18 (9th Cir. 1999). See also Lee v. City of Los Angeles, 250 F.3d 668, 689 (9th Cir. 2001) (a court is allowed to consider extrinsic evidence without converting a motion to dismiss to a motion for summary judgment when the evidence is judicially noticeable as a matter of public record); Branch v. Tunnell, 14 F.3d 449, 454-55 (9th Cir. 1994) (a court is allowed to consider extrinsic documents without converting a motion to dismiss into a motion for summary judgment when: (1) the documents are attached to or mentioned in the pleadings; (2) the documents are not

/////

---

[1] Defendant officer Boersma has asked the court to take judicial notice of the following: (1) a certified copy of the criminal complaint filed against plaintiff for attempted grand theft of personal property and for resisting a peace officer; and (2) a certified copy of the felony abstract of judgment from plaintiff's criminal case showing that plaintiff pled guilty to attempted grand theft of personal property. Pursuant to Federal Rule of Evidence 201, the court will grant defendant's request for judicial notice.

attached but are integral to the claims; and (3) the documents are subject to judicial notice), overruled on other grounds by Galbraith v. County of Santa Clara, 307 F.3d 1119 (9th Cir. 2002).

**OTHER APPLICABLE LEGAL STANDARDS**

I. Civil Rights Act Pursuant to 42 U.S.C. § 1983

The Civil Rights Act under which this action was filed provides as follows:

> Every person who, under color of [state law] . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution . . . shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983. The statute requires that there be an actual connection or link between the actions of the defendants and the deprivation alleged to have been suffered by plaintiff. See Monell v. Department of Social Servs., 436 U.S. 658 (1978); Rizzo v. Goode, 423 U.S. 362 (1976). "A person 'subjects' another to the deprivation of a constitutional right, within the meaning of § 1983, if he does an affirmative act, participates in another's affirmative acts or omits to perform an act which he is legally required to do that causes the deprivation of which complaint is made." Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir. 1978).

Moreover, supervisory personnel are generally not liable under § 1983 for the actions of their employees under a theory of respondeat superior and, therefore, when a named defendant holds a supervisorial position, the causal link between him and the claimed constitutional violation must be specifically alleged. See Fayle v. Stapley, 607 F.2d 858, 862 (9th Cir. 1979); Mosher v. Saalfeld, 589 F.2d 438, 441 (9th Cir. 1978). Vague and conclusory allegations concerning the involvement of official personnel in civil rights violations are not sufficient. See Ivey v. Board of Regents, 673 F.2d 266, 268 (9th Cir. 1982).

II. Fourth Amendment and Excessive Force

A claim that a law enforcement officer used excessive force during the course of an arrest is analyzed under the Fourth Amendment and an objective reasonableness standard. See Graham v. Connor, 490 U.S. 386, 395 (1989). Under this standard, "'[t]he force which [i]s

applied must be balanced against the <u>need</u> for that force: it is the need for force which is at the heart of the <u>Graham</u> factors.'" <u>Liston v. County of Riverside</u>, 120 F.3d 965, 976 (9th Cir. 1997) (quoting <u>Alexander v. City and County of San Francisco</u>, 29 F.3d 1355, 1367 (9th Cir. 1994)). In addressing this legal standard, the Ninth Circuit recently reiterated:

> We ask whether the officers' actions are objectively reasonable in light of the facts and circumstances surrounding them. We must balance the nature of the harm and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake. Stated another way, we must balance the amount of force applied against the need for that force.

<u>Bryan v. McPherson</u>, 630 F.3d 805, 823-24 (9th Cir. 2010) (internal quotations and citations omitted). See also <u>Scott v. Harris</u>, 550 U.S. 372, 383-84 (2007); <u>Santos v. Gates</u>, 287 F.3d 846, 853 (9th Cir. 2002); <u>Deorle v. Rutherford</u>, 272 F.3d 1272, 1280 (9th Cir. 2001); <u>Liston</u>, 120 F.3d at 976.

In analyzing the nature and quality of the intrusion on an individual's Fourth Amendment interests, the court considers both the type and the amount of force used. See <u>Bryan</u>, 630 F.3d at 824. "Force is excessive when it is greater than is reasonable under the circumstances." <u>Santos</u>, 287 F.3d at 854 (citing <u>Graham</u>, 490 U.S. 386). Thus,

> [a]lthough it is undoubtedly true that police officers are often forced to make split-second judgments, and that therefore not every push or shove, even if it may seem unnecessary in the peace of a judge's chambers is a violation of the Fourth Amendment, it is equally true that even where some force is justified, the amount actually used may be excessive.

<u>Santos</u>, 287 F.3d at 853 (internal quotations and citations omitted).

In analyzing the governmental interests at stake, the court considers a range of factors, including "'(1) the severity of the crime at issue, (2) whether the suspect pose[d] an immediate threat to the safety of the officers or others . . . (3) whether he [was] actively resisting arrest or attempting to evade arrest by flight,' and any other 'exigent circumstances [that] existed at the time of the arrest.'" <u>Deorle</u>, 272 F.3d at 1280 (quoting <u>Headwaters Forest Def. v. County</u>

4

of Humboldt, 240 F.3d 1285 (9th Cir. 2000), vacated and remanded on other grounds, 534 U.S. 801 (2001)).  These factors are not exclusive, however.  Rather, the court must "examine the totality of the circumstances and consider 'whatever specific factors may be appropriate in a particular case, whether or not listed in Graham.'"  Bryan, 630 F.3d at 826.  For example, the court may appropriately consider whether a warning was given before force was used.  See Deorle, 272 F.3d at 1285 ("Less than deadly force that may lead to serious injury may be used only when a strong governmental interest warrants its use, and in such circumstances should be preceded by a warning, when feasible.").

III. Qualified Immunity

Government officials enjoy qualified immunity from civil damages unless their conduct violates clearly established statutory or constitutional rights.  Jeffers v. Gomez, 267 F.3d 895, 910 (9th Cir. 2001) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)).  When a court is presented with a qualified immunity defense, the central questions for the court are:  (1) whether the facts alleged, taken in the light most favorable to the plaintiff, demonstrate that the defendant's conduct violated a statutory or constitutional right; and (2) whether the right at issue was "clearly established."  Saucier v. Katz, 533 U.S. 194, 201 (2001).

The United States Supreme Court has held that "while the sequence set forth there is often appropriate, it should no longer be regarded as mandatory."  Pearson v. Callahan, 555 U.S. 223, 236 (2009).  In this regard, if a court decides that plaintiff's allegations do not make out a statutory or constitutional violation, "there is no necessity for further inquiries concerning qualified immunity."  Saucier, 533 U.S. at 201.  Likewise, if a court determines that the right at issue was not clearly established at the time of the defendant's alleged misconduct, the court may end further inquiries concerning qualified immunity at that point without determining whether the allegations in fact make out a statutory or constitutional violation.  Pearson, 555 U.S. 236-242.

/////

   "A government official's conduct violate[s] clearly established law when, at the time of the challenged conduct, '[t]he contours of [a] right [are] sufficiently clear' that every 'reasonable official would have understood that what he is doing violates that right.'" Ashcroft v. al-Kidd, ___U.S.___, ___,131 S. Ct. 2074, 2083 (2011) (quoting Anderson v. Creighton, 483 U.S. 635 (1987)). In this regard, "existing precedent must have placed the statutory or constitutional question beyond debate." Id. See also Clement v. Gomez, 298 F.3d 898, 906 (9th Cir. 2002) ("The proper inquiry focuses on . . . whether the state of the law [at the relevant time] gave 'fair warning' to the officials that their conduct was unconstitutional.") (quoting Saucier, 533 U.S. at 202). The inquiry must be undertaken in light of the specific context of the particular case. Saucier, 533 U.S. at 201. Because qualified immunity is an affirmative defense, the burden of proof initially lies with the official asserting the defense. Harlow, 457 U.S. at 812.

## THE PARTIES' ARGUMENTS

   Defense counsel argues that the court should grant defendant officer Boersma judgment on the pleadings because he is entitled to qualified immunity. Specifically, defense counsel contends that, taking all of plaintiff's allegations as true, defendant Boersma did not violate plaintiff's rights under the Fourth Amendment. Moreover, defense counsel contends that even if plaintiff has established a constitutional violation, a reasonable officer would not have known under the circumstances presented that his conduct violated clearly established law. (Def.'s Mot. for J. on the Pleadings at 7-11.)

   In opposition to the motion, plaintiff contends that defendant officer Boersma is not entitled to qualified immunity. Specifically, plaintiff argues that on the day in question, he did not have an opportunity to surrender to police officers, that the chase that took place was brief, that the crime at issue was neither violent nor very serious, and that he posed no threat to defendant police officer Boersma or others. Plaintiff further contends that defendant Boersma did not warn him before deploying his taser and had alternative means to apprehend him. According to plaintiff, he suffered serious injuries because of defendant's use of a taser. Finally,

plaintiff contends that the Ninth Circuit had clearly established the law with respect to the use of tasers by law enforcement officers by 2010 when it decided the case of Bryan v. MacPherson, 630 F.3d 805 (9th Cir. 2010).  (Pl.'s Opp'ns to Def.'s Mot. for J. on the Pleadings at 1-4 & 1-6.)[2]

**ANALYSIS**

The court finds that defendant Boersma is entitled to qualified immunity and judgment on the pleadings.  As an initial matter, the court finds the undisputed facts in this case are as follows.  On October 15, 2011, plaintiff was committing a felony at a Golden One ATM when he saw police and fled.  Plaintiff led police on a "brief foot pursuit" when defendant officer Boersma shot plaintiff once with his taser and took him into custody.  On October 18, 2011, plaintiff pled guilty to attempted grand theft of personal property.  (Am. Compl. at 3-4; Def.'s Req. for Judicial Notice Exs. A & B.)

Even assuming for the sake of argument that defendant officer Boersma violated plaintiff's rights under the Fourth Amendment, the law on taser use was not clearly established on October 15, 2011, when alleged incident in this case took place.[3]  In fact, neither the United States Supreme Court nor the Ninth Circuit Court of Appeals had addressed taser use until fairly recently.  See Mattos v. Agarano, 661 F.3d 433, 452 (9th Cir. 2011) (en banc) (officer's use of taser in drive-stun mode in August of 2006 did not violate clearly established Fourth Amendment law); Brooks v. City of Seattle, 661 F.3d 433, 446-48 (9th Cir. 2011) (en banc) (officer's use of taser in dart-mode in November of 2004 did not violate clearly established Fourth Amendment law); Bryan, 630 F.3d at 833 (officer's use of a taser in dart mode in 2005 did not violate clearly

---

[2] Plaintiff has filed multiple oppositions to defendant's motion for judgment on the pleadings.  (Doc. Nos. 34, 38 & 45.)  In the interest of justice, the court has considered all of plaintiff's oppositions, two of which appear to be identical, in issuing these findings and recommendations.

[3] The court need not decide whether defendant Boersma's conduct violated the Fourth Amendment because the court has discretion to decide which of the two qualified immunity prongs to address fat the outset.  See al-Kidd, 131 S. Ct. at 2084 ("Courts should think carefully before expending 'scarce judicial resources' to resolve difficult and novel questions of constitutional or statutory interpretation that will 'have no effect on the outcome of the case.'").

established Fourth Amendment law with respect to the use of intermediate force).  See also Marquez v. City of Phoenix, 693 F.3d 1167, 1174-76 (9th Cir. 2012) (officer's taser use on suspect two times in dart-mode and five times in drive-stun mode was a reasonable use of force in light of blood-spattered room, injured adult, child in distress, suspect's active resistance to arrest, and suspect's immediate threat to officers and others).

In Bryan, the Ninth Circuit held that an officer's taser use amounted to excessive force in violation of the Fourth Amendment, but that the officer was entitled to qualified immunity because the law with respect to taser use and the level of force such use reflected was not clearly established at the time of the July 24, 2005 incident in question.  See Bryan, 630 F.3d at 832-33.  In that case, a police officer had stopped Bryan because he was not wearing his seatbelt.  Bryan had complied with the officer's requests to turn down his radio and pull over to the curb but, angry with himself, Bryan hit his steering wheel and yelled expletives to himself.  630 F.3d at 822.  He stepped out of the car and was agitated, yelling gibberish and hitting his thighs.  Id.  Bryan was standing twenty to twenty-five feet away from the officer when, according to Bryan's version of events, without warning the officer MacPherson shot Bryan with his taser gun.  Id.  Bryan fell face first into the ground and fractured four teeth and suffered facial contusions.  Id.  Bryan sued the police officer, MacPherson for, inter alia, excessive force in violation of the Fourth Amendment.  Id. at 823.  The Ninth Circuit held that taser guns used in dart-mode constitute "an intermediate, significant level of force that must be justified by the governmental interest involved." Id. at 826.  Under the circumstances in presented, the Ninth Circuit determined that the officer had used excessive force in violation of Bryan's rights under the Fourth Amendment.  Id. at 832.  In particular, the court observed that the "crime" at issue was a mere traffic infraction punishable by a fine, Bryan did not pose an immediate threat to the officer or bystanders, and Bryan was fifteen to twenty-five feet away from the officer and was not even facing him when the officer used his taser.  See id. at 826-29.  However, the Ninth Circuit also determined that the defendant officer was entitled to qualified immunity because he could

1  not have reasonably believed that his use of the taser use was unconstitutional given the state of
2  the law at the time of the incident. Id. at 833. Specifically, the Ninth Circuit noted that "as of
3  July 24, 2005, there was no Supreme Court decision or decision of our court addressing whether
4  the use of a taser. . . constituted an intermediate level of force." Id. at 833.

5        Similarly, in Brooks, the Ninth Circuit sitting en banc held that an officer's taser
6  use in drive-stun mode amounted to excessive force in violation of the Fourth Amendment, but
7  the officer was entitled to qualified immunity because the law on taser use was not clearly
8  established. See Brooks, 661 F.3d at 448. The case arose from events that took place on
9  November 23, 2004. 661 F.3d at 436. There, the police officer pulled the pregnant Brooks over
10 for driving 32 miles per hour in a 20 miles per hour school zone. Id. at 436. Brooks gave the
11 officer her driver's license as requested and told her son to get out of the car and walk to school,
12 which was across the street. Id. at 437. Brooks insisted that she had not been speeding and
13 refused to sign the citation written by the officer. Id. Another officer then approached Brooks'
14 car and asked her if she would sign the citation. Id. Brooks said "no" and exchanged heated
15 words with the officer. Id. The officer informed Brooks that he was going to call his sergeant
16 and she would go to jail if she did not sign the citation. Id. A few minutes later, the sergeant
17 arrived and asked Brooks to sign the citation. Id. When Brooks again refused, the sergeant told
18 the other officers to "book her." Id. When Brooks refused to get out of her car, one of the
19 officers pulled out a taser and asked if Brooks knew what it was. Id. She indicated she did not
20 know and said she needed to use the bathroom because she was pregnant and less than 60 days
21 away from her due date. Id. After the officers discussed where to tase Brooks, one opened her
22 car door and twisted her arm behind her back. Id. As Brooks clutched the steering wheel, the
23 other officer deployed his taser on Brooks's left thigh, left arm, and neck as she began to cry and
24 honk her horn. Id. After the third tase, Brooks fell over in her car, and the officers dragged her
25 out and handcuffed her. Id. Brooks sued both officers and the sergeant for, inter alia, excessive
26 force in violation of the Fourth Amendment. Id. at 438. Under the circumstances presented in

1  Brooks, the Ninth Circuit determined that a reasonable fact-finder could conclude that the
2  officers used excessive force in violation of Brooks's rights under the Fourth Amendment. Id. at
3  446.  In particular, the court observed that:  the offenses committed by Brooks were allegedly
4  minor; she did not pose an immediate threat to the officers or others; she did not evade arrest by
5  flight; and no other exigent circumstances existed.  See id. at 445-46.  However, just as in Bryan,
6  the Ninth Circuit also determined that "the law [regarding the constitutionality of the taser use in
7  the circumstances confronted] was not sufficiently clear at the time of the incident to render the
8  alleged violation clearly established." Id. at 448.

9         Finally, in Mattos, the Ninth Circuit sitting en banc held once more that an
10  officer's taser use in dart-mode amounted to excessive force in violation of the Fourth
11  Amendment, but that the officer was entitled to qualified immunity because the law with respect
12  to taser use was not clearly established at the time of the incident in question.  See Mattos, 661
13  F.3d at 452.  The Mattos case arose from events that took place on August 23, 2006.  661 F.3d at
14  438.  On that day Mattos and her husband were involved in a domestic dispute, and she asked her
15  fourteen year old daughter to call the police, which she did.  Id. at 438.  Police officers arrived at
16  the residence and saw Mattos's husband sitting on top of the stairs with a couple of open beer
17  bottles lying nearby.  Id.  Mattos's husband informed one of the officers that he and Mattos had
18  an argument but nothing physical had occurred.  Id.  The officers asked to speak with Mattos to
19  ensure she was okay.  Id.  When Mattos's husband went inside to get her, one of the officers also
20  went inside the residence.  Id. at 438-39.  Mattos's husband saw him in the residence and became
21  angry, yelling at the officer to get out because he had no right to be inside the house.  Id. at 439.
22  Officers asked Mattos to speak to them outside, which she agreed to do, but before she could
23  comply, one of the officers entered the residence and announced that Mattos's husband was
24  under arrest.  Id.  Mattos was standing in front of her husband, and when the officer moved to
25  arrest him she extended her arm and asked the officer why they were arresting her husband and
26  said everyone should calm down so as to not disturb sleeping children in the residence.  Id.  The

officer Aikala asked Mattos "Are you touching an officer?," and without warning tasered Mattos in dart-mode.  Id.  Both Mattos and her husband were taken into custody; he was charged with harassment and resisting arrest while she was charged with harassment and obstructing government operations.  Id.  Under the circumstances presented in Mattos, the Ninth Circuit once again determined that a reasonable fact-finder could conclude that the officers used excessive force in violation of Mattos's rights under the Fourth Amendment.  Id. at 451.  In particular, the Ninth Circuit observed that Mattos's offenses were minimal at most, she posed no threat to the officers, and she minimally resisted arrest while trying to protect her own body.  Id.  However, just as in Bryan and Brooks, the en banc panel of the Ninth Circuit in Mattos also determined that the law was not sufficiently clear so that every reasonable officer would have understood that his use of a taser under these circumstances violated Mattos's constitutional rights under the Fourth Amendment.  Id. at 452.

        The Ninth Circuit decided Bryan on November 30, 2010, and Brooks and Mattos on October 17, 2011, two days before the alleged incident in this case took place.  Although the events in this case took place years after the events at issue in Bryan, Brooks, and Mattos, those Ninth Circuit decisions remain highly relevant with respect to this court's inquiry as to whether the law was clearly established at the time of this incident because each involved Fourth Amendment excessive use of force claims where the use of tasers by police was at issue.  See Contreras v. City of Rialto, 894 F. Supp. 2d 1238,1255 (C.D. Cal. 2012) (Bryan, Brooks, and Mattos provide "the most extensive and recent guidance on tasers as a use of force").

        At the time of the incident at issue here it was clearly established in the Ninth Circuit, based on the decisions addressed above, that the use of a taser under certain circumstances involving investigation of misdemeanor offenses or infractions could constitute excessive use of force in violation of the Fourth Amendment.  However, contrary to plaintiff's argument, Bryan as well as Brooks, and Mattos, are so factually distinguishable from this case that this court cannot say that defendant Boersma violated any clearly established law when he

deployed his taser while apprehending plaintiff in this case. See al-Kidd, 131 S. Ct. at 2084 ("We have repeatedly told courts . . . not to define clearly established law at a high level of generality.") In particular, two of the factors a court is to consider in analyzing the reasonableness of a particular use is force are the severity of the crime at issue and whether the suspect attempted to evade arrest by flight. See Graham, 490 U.S. at 396. Unlike the traffic violations or minor offenses at issue in Bryan, Brooks, and Mattos, the crime under investigation in this case was a felony. In addition, in contrast to the plaintiffs in Bryan, Brooks, and Mattos, plaintiff in this case fled from police and was attempting to evade arrest. In light of existing precedent in 2011, a reasonable officer in defendant Boersma's position clearly could have reasonably believed that his use of a taser to apprehend plaintiff was constitutional. See Pearson, 555 U.S. at 231 ("qualified immunity applies regardless of whether the government official's error is 'a mistake of law, a mistake of fact, or a mistake based on mixed questions of law and fact.").

      This finding that defendant officer Boersma is entitled to qualified immunity is supported by those few decisions addressing an officer's use of a taser to stop a fleeing suspect. When faced with such circumstances, courts have held either that an officer's use of a taser is justified to stop the suspect or that the officer is entitled to qualified immunity given the lack of clearly established law on the subject. See Beaver v. City of Federal Way, 507 F. Supp. 2d 1137, 1141 (W.D. Wash. 2007) ("Beaver was attempting to flee and the Court has no trouble concluding that the first tasing was justified to stop him."); Burns v. Barreto, No. 2:10-cv-1563 MCE KJN PS, 2012 WL 2258555, at *13 (E.D. Cal. June 15, 2012) (granting qualified immunity in taser use case and citing cases); Azevedo v. City of Fresno, No. 1:09-cv-375 AWI DLB, 2011 WL 284637 at *15 (E.D. Cal. Jan. 25, 2011) ("Given the crime at issue, the active flight and evasion of Azevedo following a question regarding weapons, Carr's fatigue, and the sparse yet developing state of the law on November 7, 2007, the Court concludes that the law

/////

regarding taser use was not clearly established such that a reasonable officer in Carr's position would know that use of the taser on Azevedo was improper.").

In sum, under the circumstances of this case (involving a police investigation involving the commission of a felony offense and the flight of the suspect in an attempt to evade arrest) the court finds that defendant Boersma is entitled to qualified immunity with respect to plaintiff's Fourth Amendment excessive use of force claim in connection with the defendant's use of a taser. Accordingly, defendant Boersma's motion for judgment on the pleadings should be granted.

## OTHER MATTERS

Also pending before the court is plaintiff's motion to amend his complaint to add the City of Vallejo as a defendant. This is the second time plaintiff has sought leave to add the city as a defendant. Once more, however, plaintiff's proposed allegations fail to state a cognizable claim for relief. As the court previously advised plaintiff, to state a claim against the city he would need to allege facts establishing that the city caused his constitutional violation through a custom or policy or by failure to train. Here, plaintiff has set forth only conclusory allegations about the city's purported policy of allowing officers to use excessive force and its failure to train officers on taser use. It is well settled that "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). Accordingly, plaintiff's motion to amend should be denied.

Plaintiff has also filed a motion for summary judgment, which defendant Boersma has opposed on the grounds of qualified immunity. For the reasons discussed above, the undersigned has concluded that defendant Boersma is entitled to qualified immunity with respect to plaintiff's Fourth Amendment claim. Accordingly, plaintiff's motion for summary judgment should be denied.

/////

/////

**CONCLUSION**

IT IS HEREBY ORDERED that defendant's request for judicial notice (Doc. No. 27) is granted.

IT IS HEREBY RECOMMENDED that:

1. Defendants' motion for judgment on the pleadings based on the affirmative defense of qualified immunity (Doc. No. 26) be granted;

2. Plaintiff's motion to amend (Doc. No. 31) be denied;

3. Plaintiff's motion for summary judgment (Doc. No. 37) be denied;

4. All other pending motions, including plaintiff's motion to compel, motion for an extension of time for discovery, and motion for sanctions (Doc. Nos. 44, 46 & 47) be denied as moot; and

5. This action be closed.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within fourteen days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any reply to the objections shall be served and filed within seven days after service of the objections. The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

DATED: May 20, 2013.

_____
DALE A. DROZD
UNITED STATES MAGISTRATE JUDGE

DAD:9
blac1439.57